UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
THOMAS VELLUZZI,

Plaintiff,

- against -

**MEMORANDUM AND ORDER**

NEW YORK CITY POLICE DEPARTMENT and CITY OF NEW YORK,

25 Civ. 3712 (NRB)

Defendants.
--------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Thomas Velluzzi ("Velluzzi") filed this case on May 2, 2025 against defendants City of New York (the "City") and the New York City Police Department ("NYPD").[1] Velluzzi, a Catholic who objects to vaccination on religious grounds, worked as a "steamfitter" for the NYPD from 2019 to 2022. After the City announced a Covid-19 vaccination requirement for all City employees in 2021 (the "Vaccine Mandate"), Velluzzi applied for a religious accommodation that would allow him to submit a weekly Covid-19 test rather than receive the vaccine. The NYPD denied Velluzzi's application and a citywide appeals panel (the "Citywide Panel") denied his subsequent appeal. Velluzzi was fired from his position on June 7, 2022 for failing to receive the vaccine.

---

[1] Because the NYPD, as an agency of the City, is a non-suable entity, see infra Discussion Section I, the Court will often refer to both defendants collectively as "the City."

Velluzzi argues that his religious accommodation request was improperly denied and brings four claims: an as-applied constitutional claim under the First Amendment's "Free Exercise" Clause (Count I); a "failure to accommodate" claim under the New York City Human Rights Law ("NYCHRL") (Count II); another "failure to accommodate" claim under the New York State Human Rights Law ("NYSHRL") (Count III); and a "failure to engage in cooperative dialogue" claim under the NYCHRL (Count IV). ECF No. 1 ("Complaint") ¶¶ 348-426. Now before the Court is defendants' November 5, 2025 motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 15. For the following reasons, defendants' motion is granted in part and denied in part.

**BACKGROUND**

Before discussing the parties' legal arguments, the Court will briefly recite the pertinent facts of the case, as recounted in the Complaint and a joint timeline stipulated by the parties, ECF No. 11 ("Joint Timeline").

Velluzzi worked as a steamfitter for the NYPD's Facility Maintenance Division ("NYPD FMD") beginning on January 6, 2019. Complaint ¶¶ 12-13, 23-25. Velluzzi worked on "steam and hot water heating systems, including maintenance and repair of steam-supplied water heaters, heating systems for NYPD buildings, and steam equipment in mechanical rooms." Id. ¶ 26. Velluzzi was the "sole" steamfitter employed by NYPD FMD and "spent approximately

ninety percent of his work hours working alone in mechanical rooms at NYPD facilities." Id. ¶¶ 29-30.

On October 20, 2021, the New York City Department of Health and Mental Hygiene issued the Vaccine Mandate, which required all City employees "to show proof of at least one dose of COVID-19 vaccination by 5:00 p.m. on October 29, 2021." Joint Timeline at 1. The following day the NYPD issued an "FAQ on New York City Employees Vaccine Mandate" to all its employees, including Velluzzi, which "set forth the process by which an employee could apply for an accommodation to the Mandate, and how an employee could submit an appeal in the event the accommodation request was denied." Id.; see also ECF No. 11-1, Exhibit A ("NYPD FAC").

On October 27, 2021, Velluzzi submitted a timely application for a religious accommodation to the NYPD's Equal Employment Opportunity Division, pursuant to the process outlined in the NYPD FAC. See Joint Timeline at 2. Velluzzi attached an approximately 2,800-word letter in support of his application. ECF No. 11-1, Exhibit B ("Letter to NYPD"). In his letter, Velluzzi recounted the evolution of his Catholic faith from childhood to adulthood. Id. at 1-2. He described how, although his parents had him vaccinated as a child, he had developed a strong religious conviction as an adult that vaccination was against "God's teachings." Id. In particular, Velluzzi stated his belief "that our bodies are of God's creation, in which he imparted in us his

divine image" and that "[i]t is my strong belief, whether in sickness or in health, that our faith and trust remain in God, and our dependence in the will of Him, not the will of man. [] 'So that your faith might not rest on human wisdom but on the power of God.' – 1 Corinthians, 2:5[.]" Id. at 3. In addition to general opposition to medical intervention, Velluzzi stated other objections to the perceived use of "aborted" fetal cells lines, genetically modified organisms, and/or various animal proteins in vaccine development, all of which violated his conviction that "our bodies, being not just of our own, should be kept clean and pure; ready to receive Him, and prepared to offer as our living sacrifice." Id. at 3-4.

Velluzzi also recounted his own history of vaccine refusal in his letter. He stated that he has not received a vaccine since 2012 and only did so then under "duress." Id. at 4. He further attested that his wife does not accept vaccinations, and that he and his wife home-schooled their children to avoid the New York State public school's vaccine requirement. Id. While acknowledging that the Catholic Church and Pope Francis I "support[ed] . . . the vaccines," Velluzzi stated that "it is within one's own explication and understanding of the Lord's teachings that will determine how they worship, observe, accede and implement the glory they give to God; regardless of the Popes abutment." Id. at 5.

On February 15, 2022, the NYPD sent Velluzzi a pre-written checklist denying his application. ECF No. 11-1, Ex. C ("Checklist"). The Checklist included eight potential reasons for a denial of an accommodation. Two boxes were checked: (i) "Insufficient or missing religious documentation" and (ii) "No demonstrated history of vaccination/medicine refusal." Id. The Checklist notified Velluzzi that he had seven days to appeal the NYPD's decision to the Citywide Panel. Id.

On February 17, 2022, Velluzzi submitted a timely appeal to the Citywide Panel. ECF No. 11-1, Exhibit D ("Letter to Citywide Panel"). Velluzzi objected to the "documentation" reason for his rejection, stating that "[t]here is no entity, religious leader, or member of clergy with the authority to 'certify' or 'legitimaze' . . . ones own relationship with God[.]" Id. at 1. Velluzzi also objected to the Checklist's representation that he had no "history" of vaccination refusal, repeating that he had not received a vaccine for the previous ten years. Id. at 2.

On May 11, 2022, the Citywide Panel denied Velluzzi's application because his request "Does Not Meet Criteria," without further explanation. ECF No. 11-1, Exhibit E. The notice from the Citywide Panel informed Velluzzi that "you now have **seven calendar days** from the date of this notice to submit proof of vaccination [or] you will be placed on a leave without pay (LWOP)." Id. Velluzzi did not submit proof of vaccination within seven

days and was placed on leave without pay "effective May 31, 2022." Joint Timeline at 2. Then, on June 7, 2022, Velluzzi was formally terminated. Id.

After his dismissal, Velluzzi alleges he experienced extreme "financial distress" due to the loss of his salary and benefits, and that he "was compelled to sell his family home" and "leave behind his church community," "extended family," and "aging parents" to relocate to Florida. Id. ¶¶ 339-43. Velluzzi seeks compensatory damages for back pay, benefits, and pain and suffering in an amount exceeding $75,000. Id. ¶¶ 20, 426.

**PROCEDURAL HISTORY**

Velluzzi filed the Complaint on May 2, 2025. On July 3, 2025, the City submitted a letter pursuant to Rule 2(b) of this Court's Individual Practices, seeking leave to file a motion to dismiss, ECF No. 8, and on July 22, 2025, Velluzzi submitted a letter in opposition, ECF No. 9. The Court then requested a joint timeline from the parties "of all applications submitted by Mr. Velluzzi to the New York Police Department and/or the Citywide Panel, and all responses thereto." ECF No. 10. On August 8, 2025, the parties submitted the Joint Timeline, together with relevant exhibits, ECF No. 11-1.

On September 11, 2025, the Court held a conference with the parties and granted the City permission to bring its motion to dismiss. On November 5, 2025, the City filed the motion. See ECF

Nos. 15, 16 ("Mot."). On December 5, 2025, Velluzzi submitted his opposition, ECF Nos. 17 ("Opp."), 17-1 ("Velluzzi 2(C) Letter"), and on January 5, 2026, the City replied, ECF Nos. 20 ("Reply"), 21 ("City 2(C) Letter").

## LEGAL STANDARDS

To withstand a motion to dismiss under Rule 12(b)(6), a non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court "must accept[] as true all factual allegations in the complaint and draw[] all reasonable inferences in plaintiff's favor[.]" Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## DISCUSSION

The City makes five arguments in favor of dismissal: (i) the NYPD is a non-suable entity as an agency of the City; (ii) this action should have been brought in an Article 78 proceeding in New York State court; (iii) Velluzzi has failed to plead a First

Amendment claim; (iv) Velluzzi has failed to plead NYSHRL or NYCHRL "failure to accommodate" claims; and (v) Velluzzi has failed to plead a "cooperative dialogue" claim pursuant to the NYCHRL. The Court will consider these arguments seriatim.

**I. NYPD as a Non-suable Entity**

First, the City argues that the "NYPD should be dismissed because [it] is a non-suable entity under the New York City Charter." Mot. at 1, 7. The City is correct that "[t]he NYPD, as a city agency, is not a suable entity," Paige-El v. Herbert, 735 F. App'x 753, 755 (2d Cir. 2018) (citing N.Y. City Charter Ch. 17, § 396), and Velluzzi did not address or oppose this aspect of the motion in his briefing. All claims against the NYPD are therefore dismissed, leaving the City as the sole defendant.

**II. Article 78**

Next, the City argues that this case should have been brought as an Article 78 proceeding in New York state court "because Plaintiff's claims challenge administrative determinations by a government entity." Mot. at 7. The City further argues that Velluzzi's claims are untimely because the statute of limitations for Article 78 claims is only four months. Id. at 8-9.

Article 78 of New York's Civil Practice Law and Rules allows for expedited challenges to the actions of a government agency. N.Y. C.P.L.R. §§ 7801, 7803; see also Davidson v. Capuano, 792 F.2d 275, 280 (2d Cir. 1986). Article 78 proceedings differ from

typical cases in that they provide less process and restrict available remedies to declaratory and/or injunctive relief. Whitfield v. City of New York, 96 F.4th 504, 534 (2d Cir. 2024). In general, "it is the petitioner's choice whether to bring an Article 78 proceeding—with the attendant summary procedures, deferential review of agency action, and limited menu of relief—or[, alternatively,] a plenary action." Maiorino v. City of New York, No. 25 Civ. 0097 (LJL), 2026 WL 1948302, at *9 (S.D.N.Y. July 6, 2026) (quoting Whitfield, 96 F.4th at 528).

The City cites a series of state court decisions in which the plaintiffs chose or were forced to bring claims under Article 78. See Mot. at 7-9. These cases stand for the basic proposition that plaintiffs may not escape Article 78's four-month statute of limitations by refashioning their claims as a plenary action. See, e.g., Nieves v. N.Y.C. Police Dep't, 2024 N.Y. Slip Op. 33476(U), at *4 (Sup. Ct. N.Y. Cnty. 2024) (finding that the "true nature of the Verified Complaint, stripped of all artifice, squarely fits the parameters of a CPLR article 78 proceeding"). However, the Court does not believe Velluzzi's claims here are a mere pretext to avoid the strictures of Article 78.

First, Velluzzi alleges that he was denied a reasonable accommodation because of discriminatory bias against his "idiosyncratic" religious beliefs. Complaint ¶¶ 9, 376. "New York courts have held that NYSHRL claims regarding employees'

requests for reasonable accommodation are substantively about the complained-of discrimination, and therefore are governed by a three-year statute of limitations,"[2] rather than the four-month statute of limitations for an Article 78 challenge. Chinchilla v. New York City Police Dep't, No. 23 Civ. 8986 (DEH), 2024 WL 3400526, at *11 (S.D.N.Y. July 12, 2024) (citing Bistrisky v. N.Y. State Dep't of Corr. Servs., 804 N.Y.S.2d 443, 444 (3d Dep't 2005)); see also Maiorino, 2026 WL 1948302, at *10.

Second, Velluzzi is seeking compensatory damages, which are generally not recoverable in Article 78 proceedings unless they are "incidental" to the primary injunctive relief sought. See Complaint ¶¶ 356, 379, 407, 426; see also Whitfield, 96 F.4th at 534. While Velluzzi's claimed damages for back pay could be "incidental" to an Article 78 injunction, Velluzzi also seeks additional damages for pain and suffering.[3] The Second Circuit has held that if "[a portion of] the compensatory damages [plaintiff] seeks . . . are for emotional pain and suffering, they are not incidental to the main [injunctive] relief" available

[2] Velluzzi was fired on June 7, 2022 for noncompliance with the Vaccine Mandate and brought this case on May 2, 2025, less than three years later. Complaint; Joint Timeline. Thus, his claims are timely unless Article 78 applies.

[3] Velluzzi alleges that after his firing he fell into debt, was compelled to sell his family home, and was effectively forced to move to Florida and "leave his aging parents," friends, and extended family in New York. Complaint ¶¶ 336-43. He further alleges that his firing placed "extreme strain" on his wife and family and caused him to "feel isolated, shamed, and judged." Id. ¶¶ 332-35.

through Article 78, such as "reinstatement." Antonsen v. Ward, 943 F.2d 198, 204 (2d Cir. 1991). Consequently, it would be inappropriate to dismiss this action because an Article 78 forum would "not have the power to award the full measure of relief sought[.]" Maiorino, 2026 WL 1948302, at *9 (citing Davidson, 792 F.2d at 278) (internal quotation marks omitted).

The City relies on Campagna v. New York City Police Dep't, in which the Appellate Division concluded that an NYPD employee fired for non-compliance with the Vaccine Mandate was obligated to proceed under Article 78. 231 A.D.3d 531, 532 (1st Dep't 2024); see also Mot. at 8; Reply at 3-4. However, Campagna is distinguishable because the primary relief sought by that employee was "immediate reinstatement" through an injunction. Id. By contrast, Velluzzi does not request to be reinstated, was terminated almost three years before he filed the Complaint, and has moved his entire family to Florida.[4] Complaint ¶ 11; Joint Timeline at 2. Thus, the gravamen of his claim is not to overturn his termination but rather to obtain compensatory damages.

Finally, this case was properly brought in federal court. This Court has original jurisdiction because Velluzzi brings a federal constitutional claim, 28 U.S.C. § 1331 (federal question), and because he is a Florida plaintiff suing New York defendants

---

[4] Although Velluzzi was not obligated to bring an Article 78 challenge seeking to be reinstated, his decisions may have an impact on any damages to which he may be entitled.

for an amount exceeding $75,000, 28 U.S.C. § 1332 (diversity of citizenship). It is also expedient for the Court to exercise supplemental jurisdiction over the NYSHRL and NYCHRL claims. 28 U.S.C. § 1367; see Maiorino, 2026 WL 1948302, at *9 (quoting Acista v. City of New York, 2004 WL 691270, at *4 (S.D.N.Y. Mar. 31, 2004)) ("[t]here is simply no authority for the proposition that this court, as the forum in which plaintiff elected to bring his allegations of discrimination . . . must abstain from exercising jurisdiction for plaintiff's failure to first proceed in state court.").

For the preceding reasons, the Court concludes that Velluzzi was not obliged to bring his claims under Article 78, and that his claims are timely.

### III. Count I: First Amendment "Free Exercise"

Next, the City argues that Velluzzi has failed to plead a claim under the "Free Exercise" Clause of the First Amendment. Mot. at 10-12.

The City devotes almost all of its briefing to proving that the Vaccine Mandate and associated procedures of the Citywide Panel were "neutral and generally applicable." Id. The City is of course correct that the Second Circuit has upheld the Vaccine Mandate as constitutional on its face. See Kane v. de Blasio, 19 F.4th 152, 164 (2d Cir. 2021); New Yorkers for Religious Liberty, Inc. v. City of New York, 125 F.4th 319, 330 (2d Cir. 2025), cert.

denied sub nom. Kane v. City of New York, New York, 146 S. Ct. 993 (2025). It is also correct that associated City procedures involving the Citywide Panel have been upheld as "neutral and generally applicable."[5] New Yorkers for Religious Liberty, 125 F.4th at 330.

But Velluzzi "does not bring a facial challenge to the [Vaccine] Mandate." Opp. at 8. Rather, "[h]e brings an as-applied challenge" to the NYPD and Citywide Panel's treatment of his reasonable accommodation request. Id. In particular, Velluzzi argues that the NYPD and the Citywide Panel "discredited [his] individualized religious beliefs" and concluded that he, as a Catholic, "could not oppose vaccination because the [Catholic] Church did not officially do so." Id. at 9.

**a. As-Applied Allegations of Discrimination**

"A 'facial challenge' to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual." Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 174 (2d Cir. 2006) (citation omitted). By contrast, an "as-applied" challenge "requires an analysis of the

---

[5] To the extent Velluzzi urges the Court to apply "strict scrutiny," his arguments are rejected. See Opp. at 16-18. Instead, "a rational basis review applies because the Vaccine Mandate" and associated procedures such as the Citywide Panel, "w[ere] facially neutral and generally applicable." Annicelli v. New York City Police Dep't, No. 25 Civ. 02424 (RMB) (KHP), 2026 WL 871393, at *9 (S.D.N.Y. Jan. 9, 2026), report and recommendation adopted, No. 25 CIV. 2424 (RMB) (KHP), 2026 WL 867926 (S.D.N.Y. Mar. 30, 2026) (citing New Yorkers for Religious Liberty, 125 F.4th at 330); see also Kane, 19 F.4th at 164.

facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." Id. (citation omitted). While religious exemptions to vaccine mandates are not required, "if a government entity chooses to offer exemptions to vaccine mandates, it must do so in a non-discriminatory way." Chinchilla, 2024 WL 3400526, at *3. Thus, City employees dismissed for non-compliance with the facially-neutral Vaccine Mandate may allege that their particular requests for religious accommodation were denied for discriminatory reasons. Id.; see also Annicelli, 2026 WL 871393, at *9.

In Kane, the Second Circuit sustained an as-applied challenge to a now-defunct set of arbitration guidelines, which specified that accommodation requests "shall be denied where the leader of the religious organization [of the petitioner] has spoken publicly in favor of the vaccine," and which favored "recognized and established religious organizations" like "Christian Scientists" that had an official policy opposing vaccines.[6] 19 F.4th at 160. The Second Circuit found that an employer could not deny a petitioner's request "based on someone else's publicly expressed religious views -- even the leader of her faith" because such an

[6] As the City observes, these old arbitration guidelines are not at issue here because they were replaced by the Citywide Panel processes to which Velluzzi was subjected, and which the Second Circuit has upheld as "neutral and generally applicable." Reply at 7.

analysis "runs afoul of the Supreme Court's teaching that '[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" Id. at 168 (Hernandez v. Commissioner, 490 U.S. 680, 699 (1989)). In New Yorkers for Religious Liberty, the Second Circuit again sustained an as-applied challenge where the plaintiff "pleaded that the Citywide Panel dismissed some of her religious beliefs as too idiosyncratic to be religious in nature" or "too personal to count as properly religious." 125 F.4th at 335. However, both Kane and New Yorkers for Religious Liberty permit questioning the "sincerity" of a petitioner's religious beliefs, i.e., whether a petitioner actually believes what he or she says.[7]

The core of Velluzzi's claim is that the NYPD and/or Citywide Panel inappropriately disregarded his beliefs as too "idiosyncratic" and out-of-touch with official Catholic doctrine, in violation of Kane and its progeny. See Complaint ¶¶ 9, 164, 224, 227: Opp. at 8-9. Thus, the survival of his claim depends on

[7] For example, if a petitioner's religious objection was grounded in a vaccine's alleged use of fetal stems cells, the Citywide Panel could ask questions about whether a petitioner had taken other medications that used fetal stem cells. See Chinchilla, 2024 WL 3400526, at *4 ("Such a process may legitimately include questions about the use of other medications derived from fetal cell lines without running afoul of the First Amendment."); Bonilla v. City of New York, No. 22 Civ. 7113, 2023 WL 8372859, at *5 (S.D.N.Y. Dec. 4, 2023) ("ask[ing] appellants to describe their use of other medication and vaccines to assess whether their fetal stem cell-based objections to vaccination were sincerely held" is permissible).

whether he has alleged sufficient facts that the NYPD or Citywide Panel engaged in this prohibited analysis when reviewing his application. In examining Velluzzi's pleading, the Court has appropriately disregarded conclusory allegations[8] and has not taken judicial notice of certain documents.[9]

Our sister courts have already engaged in an exhaustive analysis of similar allegations in Chinchilla, 2024 WL 3400526 and Annicelli, 2026 WL 871393, two cases brought by Velluzzi's counsel on behalf of other NYPD employees denied religious accommodations. Both courts considered similar allegations but reached different results. In Chinchilla, the court dismissed plaintiff's allegations that the defendants viewed her religious objections as "illegitimate" because "the [complaint] does not include allegations regarding the beliefs of any NYPD or Citywide Panel personnel—i.e., the individuals who actually reviewed Plaintiff's application." 2024 WL 3400526, at *6.

---

[8] For example, the Court has not considered allegations that the NYPD or the City had a "blanket" or "automatic" policy that Catholics were not granted religious exemptions. See, e.g., Complaint ¶¶ 172-73. Another court in this district recently disregarded similar allegations brought by Velluzzi's counsel, citing the hundreds of religious exemptions actually granted to Catholics by the Citywide Panel. Maiorino v. New York City Dep't of Sanitation, No. 25 Civ. 0097 (LJL), 2026 WL 2098145, at *8 (S.D.N.Y. July 21, 2026).

[9] The Court has not taken judicial notice of a "Whistleblower Affirmation" cited by Velluzzi as evidence of the City's discriminatory policy. Complaint ¶ 111; see Chinchilla, 2024 WL 3400526, at *2 n.2 (declining to take notice of the same affirmation because "the characterization of this document is not 'a fact that is not subject to reasonable dispute.'") (quoting Fed. R. Evid. 201); Annicelli, 2026 WL 871393, at *2 n.1 (same).

While the Court does not disagree with the conclusion reached in Chinchilla, the allegations here are more similar to those in Annicelli. The Annicelli court distinguished Chinchilla by pointing to an allegation "that the Deputy Commissioner of the NYPD and head of the Reasonable Accommodation Unit for the NYPD sent an email to the Reasonable Accommodation Unit which included [a] statement," quoted from a newspaper op-ed, that "[t]here is no legitimate religious basis for exemptions from vaccine mandates in any established stream of Christianity." 2026 WL 871393, at *10. Velluzzi has cited the same email to bolster his allegation that his application was denied because it was out-of-step with mainstream Catholicism. See Complaint ¶ 146 ("The Deputy Commissioner, and head of the Reasonable Accommodation Unit for NYPD, sent an email to the Reasonable Accommodation[] Unit, including the decision-maker of Plaintiff's accommodation request, which . . . stated 'There is no legitimate religious basis for exemptions from vaccine mandates in any established stream of Christianity.'"). Although "discovery may show that this email was not intended or interpreted [in a discriminatory manner] or was not [actually] viewed or considered by the people who made the decision on [p]laintiff's exemption request," this Court agrees that these allegations "are sufficient (barely) to plausibly state a claim." Annicelli, 2026 WL 871393, at *10-11.

The City's argument that the NYPD and Citywide Panel only questioned the sincerity -- and not the legitimacy -- of Velluzzi's beliefs is undermined by its own briefing. In its opening brief, the City states that "[c]ritically, . . . Plaintiff admits his opposition to the Vaccine Mandate arose from his 'personal interpretation' of his faith . . . that was completely at odds with . . . the leader of his faith at the time the Mandate was instituted, namely, Pope Francis." Mot. at 14. "As a result, Plaintiff fails to articulate how his personal opinions about vaccines and their 'alteration' of the human body are a bona fide religious belief." Id.

As Velluzzi observes, Opp. at 13-14, the City has apparently engaged in exactly the type of analysis prohibited by Kane and New Yorkers for Religious Liberty.[10] "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." Kane, 19 F.4th, at 168 (quoting Hernandez, 490 U.S. at 699); see also id. ("[d]enying an individual a religious accommodation based on someone else's publicly expressed religious views—even the leader of her faith" is unconstitutional); Maiorino, 2026 WL 1948302, at *7 (same). While

[10] The City made its statement in the separate NYSHRL and NYCHRL "failure to accommodate" section. See Mot. at 14. However, this type of analysis is also prohibited there, where the only questions are whether a belief is "sincere" and "in [plaintiff's] own scheme of things, religious." Maiorino, 2026 WL 1948302, at *10 (citation omitted).

the City's briefing is by no means dispositive of what the NYPD or Citywide Panel members did or did not consider when reviewing Velluzzi's application, the City's embrace of the very attitude it must disprove makes it difficult to dismiss Velluzzi's First Amendment allegations as implausible.

**b. Undue Hardship**

Next, the City argues that granting a religious accommodation to Velluzzi would have imposed an "undue hardship."[11] Mot. at 18-19. Velluzzi pleads that the City granted religious accommodations through weekly PCR testing to over 559 other NYPD employees, including police officers, detectives, and other employees working in "close contact with the public and their colleagues." Complaint ¶¶ 105-08. Velluzzi also alleges that as the sole full-time steamfitter employed by NYPD FMD, he "spent approximately ninety percent of his work hours working alone in mechanical rooms at NYPD facilities." Id. ¶ 29. The City's proffered reasons for why accommodation was burdensome are largely circular and nonspecific. See Mot. at 18 (Velluzzi's "suggested accommodation of weekly testing . . . would require Defendants to track [his] compliance with testing").

[11] The City primarily makes this argument in relation to Velluzzi's NYSHRL and NYCHRL claims. However, as "undue hardship" is also a basis for a Court to find a "rational basis" for a religious exemption denial under the First Amendment, the Court also considers the City's contentions here.

The Second Circuit has held that certain risks establish "undue hardship" and thereby provide a "rational basis" for denying a religious accommodation. For example, in New Yorkers for Religious Liberty the Second Circuit dismissed an as-applied challenge to the Vaccine Mandate because each relevant plaintiff "is a classroom teacher who, under the present circumstances, cannot physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population." 125 F.4th at 333. Based on that clear risk, none of the teachers could make "a more-than-conclusory allegation . . . that the finding of undue hardship was erroneous or pretextual." Id.

Velluzzi, a steamfitter who worked alone in isolated mechanical rooms, is not comparable to a classroom teacher or even a police officer. Moreover, the City has articulated no clear reason why granting him the same accommodation granted to other employees -- including employees with more day-to-day exposure to others -- would impose an undue hardship. Accordingly, the Court cannot dismiss his First Amendment claim on this basis. See Annicelli, 2026 WL 871393, at *10 ("[T]here are sufficient facts to plausibly infer that it would not have been an undue hardship to have accommodated plaintiff by allowing him to mask and test rather than receive a vaccine.").

For the preceding reasons, the City's motion to dismiss Velluzzi's First Amendment claim is denied.

## IV. Counts II and III: Failure to Accommodate

Next, the Court will consider the sufficiency of Velluzzi's "failure to accommodate" claims under the New York State Human Rights Law and New York City Human Rights Law. The NYSHRL states, in relevant part, that:

> (a) It shall be an unlawful discriminatory practice for any employer, or an employee or agent thereof, to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement or transfers, any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship[.]

N.Y. Exec. Law § 296(10)(a). The NYCHRL similarly requires employers to accommodate employees' religious practices unless the employer can demonstrate "undue hardship." N.Y.C. Admin. Code § 8-107(3)(a)-(b). "[I]f a plaintiff states a claim pursuant to the NYSHRL, the plaintiff also states a claim pursuant to the NYCHRL." Lee v. New York City Fire Dep't, No. 24 Civ. 4772 (VMS), 2025 WL 2772855, at *3 (E.D.N.Y. Sept. 29, 2025). The NYSHRL and NYCHRL are also coextensive with Title VII, the equivalent federal statute. Ferraro v. Kellwood Co., 440 F.3d 96, 99 (2d Cir. 2006)

(Title VII and NYSHRL religious accommodation standards "are the same").

Under the traditional test, a plaintiff can make a prima facie case under Title VII, the NYSHRL, and the NYCHRL by alleging "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." Knight v. Connecticut Department of Public Health, 275 F.3d 156, 167 (2d Cir. 2001). However, Title VII's traditional prima facie test has recently been modified to remove the second element, that an employee "inform" their employer of their need for accommodation. Bergin v. New York State Unified Ct. Sys., 182 F.4th 203, 209 (2d Cir. 2026) (citing EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768 (2015)). It has also been modified to require that an employer must be "motivated," at least in part, "by the desire to avoid offering a religious accommodation[.]"[12] Id. Because the NYSHRL and NYCHRL largely mirror the federal standard for Title VII

---

[12] "The Supreme Court [has] rejected one requirement of [the Second Circuit's] old rule (that a plaintiff inform an employer of the need for an accommodation) and clarified that what a plaintiff must plead and, ultimately, prove (that the employer was motivated in part by the desire to avoid offering a religious accommodation)." Bergin, 182 F.4th at 209 (citing Abercrombie, 575 U.S. at 772). "Now, to state a prima facie case of failure to accommodate religious belief or practice under Title VII, a plaintiff must [plead] (1) that she actually required an accommodation of her religious practice, and (2) that the employer's desire to avoid the actually required prospective accommodation was a motivating factor in (3) an adverse employment decision." Id. at 206.

claims, the Court has considered Velluzzi's claims under both the traditional test and the new test articulated in Abercrombie and Bergin. Under either the traditional or updated prima facie test, the result here would be the same.[13]

If an employee makes a prima facie case, the burden shifts to the employer to prove that accommodating the employee would cause "undue hardship" to the employer. Algarin v. NYC Health + Hosps. Corp., 678 F. Supp. 3d 497, 508 (S.D.N.Y. 2023), aff'd sub nom. Algarin v. New York City Health & Hosps. Corp., No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024). An "undue hardship" is an accommodation that creates "significant expense or difficulty," including "significant interference with the safe or efficient operation of the workplace[.]" N.Y.C. Admin. Code § 8-107(3)(b).

The City argues the failure to accommodate claims should be dismissed because (i) Velluzzi has not demonstrated a bona fide religious belief, (ii) his termination did not constitute "discipline" but was rather a "condition of employment," and (iii)

[13] It is undisputed that the NYPD and the City had actual knowledge of Velluzzi's need for a religious accommodation because he formally applied for one. It is also clear that the NYPD and the City were "motivated" in part by a "desire to avoid offering" such an accommodation because they cited Velluzzi's refusal to comply with the Vaccine Mandate in his June 7, 2022 termination letter, and continue to assert that doing so would have imposed an undue hardship. ECF Nos. 11, 11-1 at 44; see Bergin, 182 4th at 209. To the extent Velluzzi must plead that that "motive" was "discriminatory," Bergin, 182 4th at 210, the Court finds that the allegations the NYPD or Citywide Panel considered the "idiosyncratic" nature of his beliefs, as compared to mainstream Catholicism, are sufficient at this stage. See supra Discussion Section III.

accommodating Velluzzi would have posed an "undue hardship." Mot. at 12-19. The Court will consider each of these arguments in turn.

**a. Bona Fide Religious Belief**

First, the City argues that Velluzzi did not have a bona fide religious belief opposing vaccination. Mot. at 13-16; Reply at 8-9. To determine whether a religious belief is bona fide, courts look to "whether the beliefs professed by a claimant are sincerely held and whether they are, in [plaintiff's] own scheme of things, religious." Maiorino, 2026 WL 1948302, at *10 (quoting Jackson v. Amazon.com, Inc., 2024 WL 4989237, at *4 (E.D.N.Y. Dec. 5, 2024), aff'd, 2026 WL 742446 (2d Cir. Mar. 17, 2026) (summary order)). "The first requirement (i.e., sincerity of a person's religious belief) is a question of fact—unsuitable to resolution at the motion to dismiss stage." Jackson v. New York State Off. of Mental Health - Pilgrim Psychiatric Ctr., No. 23 Civ. 04164 (JMA) (ARL), 2024 WL 1908533, at *5 (E.D.N.Y. May 1, 2024) (citation omitted). "As to the second requirement (i.e., that the beliefs be religious)," that requirement is satisfied "so long as the claimant conceives of the[ir own] beliefs as religious in nature." Id. (citation omitted).

In his letters to the NYPD and Citywide Panel, Velluzzi extensively quotes Bible passages, describes the central role of his faith in his daily life, and makes specific objections to vaccinations as impermissibly "altering" human bodies in violation

of those religious beliefs. See Letter to NYPD; Letter to Citywide Panel. For example, Velluzzi stated that:

> It is my deeply held and unshakable conviction that our bodies are of God's creation, in which he imparted in us his divine image. That each of us were created perfectly, our bodies sacred, a temple in which should be used only to honor and glorify Him. ['Bless the Lord O my soul and forget not all His benefits; Who forgives all your iniquities, Who heals all your diseases' Psalm 103:2-3] It is my strong belief, whether in sickness or in health, that our faith and trust remain in God, and our dependence in the will of Him, not the will of man.

Letter to NYPD at 3 (alterations in original); see also Complaint ¶ 80. He further stated his objection to the use of fetal stem cells in vaccination development, as well as any genetically modified organisms or animal proteins that may be introduced to the body or used in the vaccination process. Id. Finally, Velluzzi states that he has not taken a vaccine since 2012, and that he and his wife homeschooled their children to avoid New York State's public school vaccination requirement. Id. at 4. Such allegations have been held to satisfy the bona fide requirement.[14] See Gardner-Alfred v. Fed. Rsrv. Bank, 143 F.4th 51, 63-64 (2d Cir. 2025) (Catholic concerned about fetal cell lines stated a bona fide religious belief); Chinchilla, 2024 WL 3400526, at *8 ("[A]lthough the NYPD denied her request in part due to the lack

[14] Such allegations also satisfy the requirement that Velluzzi "actually required an accommodation" under Bergin's updated test. 182 F.4th at 206.

of demonstrated history of vaccine and medication refusal, the FAC alleges that Plaintiff refuses all vaccination for herself and her children[; t]hese allegations can be tested in discovery, but on a motion to dismiss they must be accepted, and Plaintiff therefore satisfies the first prong of the prima facie case.").

To rebut Velluzzi's pleading, the City makes a series of arguments, none of which are convincing. First, the City argues that Velluzzi's beliefs are "at odds with . . . the leader of his faith at the time the Mandate was instituted, namely, Pope Francis." Mot. at 14. As the Court stated earlier, such arguments are impermissible because they do not ask whether a belief is "sincere" or "religious," but rather attack a belief's legitimacy through comparison to official doctrine. <u>See</u> <u>supra</u> Discussion Section III; <u>see also</u> <u>Gardner-Alfred</u>, 143 F.4th at 65 ("It . . . does not matter whether [plaintiff's] views align with the dogma articulated by a particular representative of Catholicism; what matters is that she believed that receiving the Covid-19 vaccine would be inconsistent with the teachings of the Catholic Church.").

Second, the City cites <u>Caviezel v. Great Neck Public Schools</u> for the proposition that a religious belief may not be "sincere" if there is evidence a plaintiff did not actually follow it. 701 F. Supp. 2d 414, 426 (E.D.N.Y. 2010), <u>aff'd</u>, 500 F. App'x 16 (2d Cir. 2012); Mot. at 14. <u>Caviezel</u> is distinguishable because it was decided on "the more rigorous likelihood-of-success standard"

for a preliminary injunction that would "affect government action." 701 F. Supp. at 426. Thus, the Caviezel court engaged in analysis, such as an examination of whether use of over-the-counter medications disproved the sincerity of a religious belief, that is not appropriate at the motion to dismiss stage. Id. at 429; see also Gardner-Alfred, 143 F.4th at 64 ("[E]vidence that [petitioner] may have acted inconsistently with her religious beliefs, in that she took medications without first checking to ensure they were not 'made using aborted fetal cell lines,'" was not dispositive even at the summary judgment stage but rather went to "credibility" at trial) (citations and internal quotation marks omitted).

The City also argues Velluzzi's beliefs were not properly "religious" but rather "personal or philosophical." Mot. at 14. For example, the City cites Pierre v. Fire Dep't of the City of New York, in which a Court found that a New York City Fire Department employee's belief was "sincere" but not "religious." 2023 WL 2626894, at *1 (N.Y. Sup. Ct. Mar. 24, 2023). Pierre is clearly distinguishable because the letter submitted by that petitioner to the FDNY listed concerns about "adverse long-term side effects" and the "use[] [of] stem cells from fetuses," but did not make explicit reference to religion. Id. Here, by contrast, Velluzzi submitted lengthy and detailed information to the NYPD and Citywide Panel about his Catholicism, belief in God,

and the connection between those beliefs and his opposition to vaccines.[15] See Maiorino, 2026 WL 1948302, at *11 (distinguishing Pierre on the same basis). This is sufficient to allege that Velluzzi himself viewed his opposition to vaccination in religious rather than secular terms. Jackson, 2024 WL 4989237, at *4.

For the preceding reasons, the Court holds that Velluzzi has pleaded a bona fide religious belief.

**b. Employer Awareness and Motivation**

The City does not contest that Velluzzi has satisfied the second prong of the traditional test, that an employee "inform" his employer of his need for a religious accommodation. Mot. Furthermore, even if the City did raise a dispute, this element has been modified in the Title VII context. Bergin, 182 F.4th at 206 (requiring that an employer be aware of the need for accommodation and be in-part "motivated" by a "desire to avoid" granting such an accommodation).[16] Accordingly, the second prong is satisfied.

---

[15] Courts have also distinguished Pierre because it was an Article 78 case in which the agency's actions were "reviewed[] under an arbitrary-and-capricious standard." Farrell v. City of New York, No. 23 Civ. 04329 (JLR), 2024 WL 3849333, at *5 (S.D.N.Y. Aug. 16, 2024). "Here, in contrast, the Court considers, under a standard much more favorable to Plaintiff, whether she has asserted sufficient facts, accepted as true, to state a plausible claim for religious discrimination." Id.

[16] The fact that Velluzzi formally requested an accommodation, Abercrombie, 575 U.S. at 774 (a "request for accommodation . . . make[s] it easier to infer motive[.]"), and that this case, unlike Bergin, is brought on a motion to dismiss posture, 182 F.4th at 208, makes the Court's task straightforward.

**c. Adverse Action or Discipline**

Next, the City argues that Velluzzi's termination was "due to his failure to meet a condition of his employment, . . . and therefore [was] not disciplinary" under the third prong of the traditional test. Mot. at 16; see also Reply at 9.

Courts in this district have repeatedly rejected efforts to label the dismissal of an employee for non-compliance with the Vaccine Mandate as a non-disciplinary "condition of employment." The NYSHRL and NYCHRL prohibit any "condition . . . that would require [an employee] to violate or forego a sincerely held practice . . . unless" there is "undue hardship." N.Y. Exec. Law § 296(10)(a)(emphasis added); accord N.Y.C. Admin. Code § 8-107(3)(a)-(b). Thus, the City's argument "that [plaintiff] fails to satisfy the third prong of the prima facie test because following the vaccine mandate was a 'mandatory condition of employment,' and . . . not discipline . . . is just flat wrong." Rizzo v. New York City Dep't of Sanitation, No. 23 Civ. 7190 (JMF), 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024) (collecting cases); accord Maiorino, 2026 WL 1948302, at *13-14; Murphy v. New York City Police Dep't, No. 23 Civ. 11235 (MMG), 2025 WL 3493692, at *3 (S.D.N.Y. Dec. 5, 2025); Mumin v. City of New York, 760 F. Supp. 3d 28, 46 (S.D.N.Y. 2024); Chinchilla, 2024 WL 3400526, at *9. "[T]here is no catch-all exception to the state and city human rights laws for 'conditions' of employment—to the contrary, those

statutes expressly contemplate claims conditions of employment may be discriminatory." Maiorino, 2026 WL 1948302, at *13.

The City cites a series of cases in which plaintiffs brought procedural due process challenges to their vaccine-related terminations. See Mot. at 16-17 (citing Marciano v. De Blasio, 589 F. Supp. 3d 423, 426, 436 (S.D.N.Y. 2022); Broecker v. NY City Dep't of Educ., 585 F. Supp. 3d 299, 314 (E.D.N.Y. 2022); Garland v NY City Fire Dep't, 574 F Supp 3d 120, 127 (E.D.N.Y. 2021); Matter of Clarke v. Bd. Of Educ. of the City School Dist. of the City of N.Y., 213 A.D.3d 548, 550 (1st Dep't 2023)). Judge Ho has already distinguished each and every one of the cases the City cites, explaining that "cases barring procedural due process claims (or analogous process-based claims arising out of state and local statutes), where courts distinguish failing to meet a condition of employment from being disciplined" are "not relevant because they do not involve [religious] discrimination claims" under Title VII, the NYSHRL, or the NYCHRL. Chinchilla, 2024 WL 3400526, at *9 (distinguishing Marciano, Broecker, Garland, and Matter of Clarke); see also Murphy, 2025 WL 3493692, at *3 ("The City's argument relies wholly on inapposite law, including cases which have merely determined that vaccination is a lawful condition of employment in the context of due process challenges.").

The Court agrees that these cases are inapposite. For example, in Marciano, the plaintiff "argue[d] that his procedural

due process rights were violated because the NYPD has failed to adhere to the disciplinary procedures set forth in section 14-115 of the New York City Administrative Code and the NYPD Patrol Guide in enforcing the vaccine requirement." 589 F. Supp. 3d at 436. But such arguments are irrelevant here, where the claim is brought under N.Y. Exec. Law § 296(10)(a) and N.Y.C. Admin. Code § 8-107(3)(a)-(b) for failure to accommodate a sincerely-held religious belief.[17] Thus, the Court concludes that Velluzzi has made a sufficient prima facie case under the NYSHRL and NYCHRL.

**d. Undue Hardship**

Finally, the City argues that even if Velluzzi has a prima facie case, "his suggested accommodation of weekly testing" would create an "undue hardship" by "requir[ing] Defendants to track Plaintiff's compliance with testing and permit[ting] him to potentially expose other NYPD employees" to Covid-19. Mot. at 18-19 (citing Algarin, 678 F. Supp. 3d at 511).

The cases cited by the City are easily distinguishable. "Algarin emerged from the context of a state rule mandating that publicly-facing healthcare personnel be vaccinated—in other words, the hardship stemmed from the fact that granting a religious

[17] Chinchilla, Murphy, Rizzo and other similar decisions were issued well before the City filed its briefs in this case. Each decision dismissed the exact "condition of employment" argument raised by the City here and distinguished the same or similar lines of caselaw cited by the City here as restricted to a due process context. The City's insistence on proffering the same stale arguments -- despite the uniform admonitions of Southern and Eastern District judges -- is a waste of judicial resources that should not be repeated.

exemption would cause the employer to violate state law." Chinchilla, 2024 WL 3400526, at *10. By contrast, in this case the City has pointed to no state law or rule that accommodating Velluzzi would require them to violate. The City's citation to Maniscalco v. N.Y. City Dep't of Educ. is also inapposite because that case was brought by schoolteachers with regular exposure to young children. 563 F. Supp. 3d 33, 33 (E.D.N.Y. 2021); see also New Yorkers for Religious Liberty, 125 F.4th at 333. Once again, the City has failed to tailor its arguments to Velluzzi -- a steamfitter who spent 90% of his working hours alone -- or explain why accommodating him would have posed a greater "hardship" than accommodating the 559 other NYPD employees who were granted an exemption. See Discussion Section III.b.

For the preceding reasons, the City's motion to dismiss Velluzzi's NYSHRL and NYCHRL claims is denied.

## V. Count IV: Failure to Engage in Cooperative Dialogue

Finally, the City moves to dismiss Velluzzi's "cooperative dialogue" claim. Mot. at 19-22; Reply at 10-11. The NYCHRL provides, in relevant part, that:

> It shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation: (1) For religious needs[.]

N.Y.C. Admin. Code § 8-107(28)(a). The statute defines "cooperative dialogue" as "the process by which a covered entity and a person . . . who may be entitled to an accommodation . . . engage in good faith in a written or oral dialogue concerning the person's accommodation needs" and potential alternatives. Id. § 8-102.

New York courts have repeatedly held that the process described in the Complaint -- whereby Velluzzi submitted an accommodation request to the NYPD, was denied, then appealed to the Citywide Panel, and was again denied -- comports with the "cooperative dialogue" requirement of the NYCHRL. See Maiorino, 2026 WL 1948302, at *14; Annicelli, 2026 WL 871393, at *14; Chinchilla, 2024 WL 3400526, at *12. As stated in Marsteller v. City of New York:

> [T]he City . . . offered public information on its process for reviewing accommodation requests related to the vaccine mandate, and informed employees about how to apply to their agency's Equal Employment Opportunity office and how to appeal denials. Petitioner availed himself of this process, the NYPD explained why his application did not qualify for an accommodation, and the parties further engaged during the administrative appeals process. Respondents also submitted evidence that they received approximately 6,000 requests for religious accommodations to the vaccine mandate from NYPD employees alone, which the City had to resolve under a constrained timeline during an evolving public health emergency. Petitioner has not established that, under these unique circumstances, the City HRL required a more robust or

> individualized dialogue than the process he received.

217 A.D.3d 543, 545 (1st Dep't 2023).

Here, it is undisputed that the NYPD sent Velluzzi an "FAQ on New York City Employees Vaccine Mandate" informing him, inter alia, of "the process by which an employee could apply for an accommodation to the Mandate, and how an employee could submit an appeal in the event the accommodation request was denied." Joint Timeline at 1 (citing NYPD FAC). Velluzzi then submitted an accommodation request to the NYPD and was denied, with the NYPD stating its reasons through the Checklist. See Checklist (checking boxes for "Insufficient or missing religious documentation" and "No demonstrated history of vaccine/medicine refusal"). While the Checklist did not provide comprehensive reasoning beyond the pre-filled boxes, courts have held that City agencies were entitled to transmit their reasoning in this format without additional dialogue. See, e.g., Chinchilla, 2024 WL 3400526, at *2 ("the NYPD denied Plaintiff's accommodation request" and "[t]he denial consisted of a pre-printed form in which three options were checked"). Similarly, courts have found that the Citywide Panel engaged in cooperative dialogue with applicants even where, as here, its only reason for denial was "Does Not Meet Criteria." Annicelli, 2026 WL 871393, at *8 (finding a cooperative dialogue where "[t]he plaintiff appealed and received a denial of her appeal

. . . stating her exemption application 'Does Not Meet Criteria.'").

Velluzzi's reliance on Lee, 2025 WL 2772855, Rizzo, 2024 WL 3274455, and similar cases is misplaced. See Opp. at 27-28. "In the limited instances where courts have found the City's processes potentially insufficient, plaintiffs alleged that their employer did not respond to their requests for information and guidance." Maiorino, 2026 WL 1948302, at *14 (distinguishing Lee and Rizzo). For example, "the plaintiff in [Rizzo] received a request [from his employer] for supplemental information about his need for an exemption and accommodation, then the plaintiff responded seeking clarification and never heard back." Annicelli, 2026 WL 871393, at *15 (distinguishing Rizzo). Here, Velluzzi pleads the NYPD never told him how to remedy the deficiencies identified in the application it denied. See Complaint ¶¶ 89-90. But he fails to allege that he ever asked for such guidance.

Taken together, the NYCHRL required that City agencies inform applicants of the process to achieve religious accommodations, and that the Citywide Panel consider appeals. However, City agencies and the Citywide Panel were not required to provide detailed feedback to each applicant given the volume of accommodation requests and the time pressures created by the Covid-19 pandemic.

## CONCLUSION[18]

For the preceding reasons, the pending motion to dismiss is granted in part and denied in part. Defendants' motion to dismiss all claims against the NYPD and to dismiss Count IV against the City is granted. However, defendants' motion to dismiss Counts I-III against the City is denied.

The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 15.

Dated: New York, New York
August 20, 2026

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

[18] Velluzzi requested oral argument on the motion. Opp. at 1. However, given that the issues presented in the motion are resolvable on the basis of established law and the written pleadings in the Complaint, the Court has determined that oral argument is not necessary.